# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

_____

Nº 06-CV-6358

_____

## ALFREDO RODRIGUEZ,

Petitioner,

VERSUS

## JAMES T. CONWAY,

Respondent.

_____

**MEMORANDUM AND ORDER**
January 6, 2010

_____

JOSEPH F. BIANCO, District Judge:

Alfredo Rodriguez (hereinafter "petitioner") petitions this Court *pro se* for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his conviction in Suffolk County Court for two counts of attempted burglary. Petitioner pled guilty to these charges in 2006 and was sentenced to concurrent indeterminate sentences of twelve years to life as a persistent violent felony offender.

In the instant habeas petition, petitioner challenges his conviction on the following grounds: (1) the replacement of a juror without his consent in a 1986 criminal trial deprived him of due process and of the effective assistance of counsel; (2) a Suffolk County trial court erred when it permitted the prosecution to withdraw its consent to a plea agreement and placed him in a pre-plea status; (3) a trial court's vacatur of a plea agreement violated his constitutional and statutory protections against double jeopardy; (4) a trial court again violated constitutional and statutory protections against double jeopardy when, after remand from an appeals court, it vacated a guilty plea made by petitioner and reinstated another, earlier plea; (5) the trial court denied him procedural and substantive due process and violated fundamental fairness to such an extent that dismissal is now proper; (6) he received ineffective assistance of appellate counsel on appeal following proceedings in 1999 and 2000; (7) he received ineffective assistance of appellate counsel on appeal following his 2003 plea and sentence; (8) he suffered additional due process violations in the 1986 trial; and (9) violations

of principles of res judicata and collateral estoppel.

For the reasons set forth below, the petition for a writ of habeas corpus is denied in its entirety. First, at the time of his guilty plea, petitioner knowingly and voluntarily waived his right to appeal the 2006 conviction in state court and his right to collaterally attack the conviction in federal court. Thus, the petition must be dismissed in light of this valid waiver. Second, even assuming *arguendo* that the waiver of habeas rights was invalid, the claims in the instant petition are precluded by his knowing and voluntary guilty plea because all of petitioner's claims relate to events that occurred prior to the 2006 guilty plea, and petitioner does not claim ineffective assistance of counsel with respect to the 2006 guilty plea. Third, the claims are procedurally barred because plaintiff did not appeal after his 2006 guilty plea. Finally, in an abundance of caution, the Court has examined the merits of all of petitioner's claims and concludes that the claims are without merit.

## I. BACKGROUND

Based upon a review of the petition and underlying record, the Court now summarizes the relevant facts.

### A. Petitioner's Arrest and the 1999 Plea

In 1998, a Suffolk County grand jury indicted petitioner on two counts of second-degree burglary. Petitioner subsequently reached a plea agreement with the District Attorney ("the People"). As part of this agreement, petitioner pled guilty to one count of second degree attempted burglary (the "1999 Plea").

The People's acceptance of the plea agreement was contingent on the trial court determining that petitioner would receive a sentence of twelve years to life. This sentence, in turn, was contingent on the trial court adjudicating petitioner a "persistent violent felony offender"[1] based on petitioner's 1981 conviction for second-degree robbery in Brooklyn and his 1986 conviction for second-degree robbery in Queens.

### B. Initial Persistent Violent Felony Offender Determination and the 2000 Plea

After a series of hearings, the trial court found that petitioner's 1986 conviction could not be used to establish persistent violent felony offender status. In particular, the court reasoned that, in petitioner's 1986 Queens trial, the court failed to make adequate inquiry as to the reasons for a juror's absence from the trial before substituting an alternate juror for the absent juror. (8/11/00 Transcript page 17 [hereinafter "T"]).

Because it determined petitioner was not a persistent violent felony offender, the court permitted the prosecutor to withdraw her consent to the plea agreement and, over petitioner's objection, placed petitioner in pre-plea status. (8/11/2000 T. 17-18.) The court made an offer to petitioner to plead guilty to both counts of second-degree burglary in

_____

[1] A persistent violent felony offender is someone who has been convicted of a violent felony "after having been previously convicted of two or more predicate violent felony convictions . . . ." N.Y. Penal Law § 70.08. When a court finds that a defendant is a persistent violent felony offender, the court must impose a specified mandatory-minimum sentence and a maximum sentence of life in prison. *See id.*

exchange for an indeterminate term of six to twelve years in prison. Petitioner accepted the court's offer and pled guilty on August 23, 2000 (the "2000 Plea"). Petitioner was subsequently sentenced to two determinate terms of seven years for each count of second-degree burglary.[2]

## C. The 2003 Second Department Decision

The People then appealed the trial court's determination that petitioner was not a persistent violent felony offender. The Appellate Division, Second Department, held that the trial court erred in determining that petitioner's 1986 conviction was unconstitutionally obtained. *People v. Rodriguez*, 753 N.Y.S.2d 854, 854 (App. Div. 2003). The Second Department reasoned that the juror substitution "was not arbitrary or made without good cause." *Id.* The appellate court then remitted the case to the Supreme Court, Suffolk County, for a determination of whether petitioner was a persistent violent felony offender "and for resentencing thereafter." *Id.* The New York Court of Appeals denied petitioner leave to appeal the Second Department's decision. *People v. Rodriguez*, 790 N.E.2d 287 (N.Y. 2003).[3]

## D. The 2003 Suffolk County Proceedings Following Remand from Second Department

Upon the case's return to the Suffolk County trial court, petitioner moved to have his 2000 plea vacated and to have the indictment dismissed. In June 2003, the trial court vacated the 2000 plea but, without petitioner's consent, reinstated the 1999 plea. The court subsequently adjudicated petitioner as a persistent violent felony offender based on his 1981 and 1986 convictions and sentenced him, based on the 1999 plea on one count of second degree attempted burglary, to an indeterminate term of 12 years to life.

## E. The 2006 Second Department Decision

Petitioner then appealed to the Second Department, arguing, among other things, the following: (1) the lower court erred in allowing the People to withdraw their consent to the 1999 plea and vacating the plea; and (2) because the 1999 plea was improperly vacated, the 2000 plea violated the constitutional and statutory prohibitions against double jeopardy, and the indictment should have been dismissed. The Second Department held that the 1999 plea was "properly vacated . . . when the People withdrew their consent to it." *People v. Rodriguez*, 811 N.Y.S.2d 752, 754 (App. Div. 2006). Thus, the Second Department concluded that jeopardy did not attach to the 1999 plea and "the defendant's rights against double jeopardy were not implicated." *Id.* The Second Department also, however, held that the Suffolk County Supreme Court did not have the power to "vacate the 2000 plea and, without [petitioner's] consent, reinstate the 1999 plea." *Id.* The court ordered the 2000 plea reinstated and the trial court to re-

---

[2] The court initially sentenced petitioner to an indeterminate term of six to twelve years. It later determined, however, that the crime of second-degree burglary required a sentence for a determinate term and re-sentenced petitioner accordingly.

[3] Additionally, petitioner's application for a writ of error *coram nobis* was denied, 766 N.Y.S.2d 896 (App. Div. 2003), as was leave to appeal that denial to the Court of Appeals. 808 N.E.2d 368 (N.Y. 2004).

sentence petitioner as a persistent violent felony offender. *Id.* at 755. The court also ordered that petitioner be afforded the opportunity to withdraw the 2000 plea because it was conditioned on the imposition of two concurrent seven-year terms. *Id.* The New York State Court of Appeals denied petitioner leave to appeal the Second Department's decision. 853 N.E.2d 258 (N.Y. 2006).[4]

## F. The 2006 Plea

After the case was remitted to Suffolk County court, petitioner negotiated a new plea agreement with the People (the "2006 plea agreement"). Under this agreement, petitioner pled guilty to two counts of second degree attempted burglary, admitted his prior felony status, and waived his right to appeal "through the state and federal system." (6/14/06 T. 2-3.) Petitioner was sentenced on August 9, 2006 to concurrent indeterminate sentences of twelve years to life as a persistent violent felony offender. (8/9/06 T.6.)

Slightly more than two months later, petitioner filed a motion in Suffolk County court pursuant to N.Y. Crim. Proc. L. § 440.20 arguing that his sentence was improper. The trial court rejected that motion in a December 4, 2006 order. Petitioner did not appeal the 2006 conviction.

## G. The Instant Petition

Petitioner filed this petition for a writ of habeas corpus on November 20, 2006. Petitioner argues the following: (1) the replacement of the juror without his consent in the 1986 Queens trial deprived him of due process and of the effective assistance of counsel; (2) the Suffolk County trial court erred when it permitted the prosecution to withdraw its consent to the 1999 plea agreement and placed him in a pre-plea status; (3) the trial court's vacatur of the 1999 plea agreement violated his constitutional and statutory protections against double jeopardy; (4) the trial court again violated constitutional and statutory protections against double jeopardy when, after remand from the Second Department, it vacated the 2000 plea and reinstated the 1999 plea; (5) the trial court denied him procedural and substantive due process and violated fundamental fairness; and (6) appellate counsel on the first appeal to the Second Department was ineffective because he failed to assert that the replacement of the juror in the 1986 Queens conviction was improper. In November 2007, petitioner filed an amended petition in which he added three additional grounds for habeas relief: (1) that his counsel on the second appeal in the Second Department was ineffective; (2) due process violations based on his 1986 Queens conviction; and (3) violations of principles of res judicata and collateral estoppel.

On February 25, 2008, respondent moved to dismiss the petition on the following grounds: (1) petitioner waived his right to federal review of his conviction in state court; (2) by pleading guilty in 2006, petitioner waived any claims for constitutional defects that purportedly occurred prior to the guilty

---

[4] The Second Department denied petitioner's application for a writ of error *coram nobis*. 840 N.Y.S.2d 915 (App. Div. 2007). The New York Court of Appeals denied petitioner's application for leave to appeal the Second Department's decision, 878 N.E.2d 1026 (2007), and denied petitioner's motion for reconsideration. 881 N.E.2d 1210 (2008).

plea; and (3) petitioner has failed to exhaust his claims. By letter dated March 4, 2008, petitioner objected to the motion and requested that, if the Court were to consider the motion, petitioner be given an opportunity to respond in detail. By Order dated April 14, 2008, the Court granted petitioner 30 days to supplement his opposition to respondent's motion to dismiss. On May 15, 2008, petitioner submitted his supplemental opposition. The Court conducted a telephonic status conference on July 25, 2008 with *pro se* petitioner and counsel for respondent. During that conference, the Court confirmed that it was treating respondent's February 25, 2008 motion as the opposition to the petition on both procedural grounds and on the merits. At that conference, petitioner requested an opportunity to submit further opposition to respondent's motion. The Court granted that application and, by letter dated August 4, 2008, petitioner submitted his supplemental papers. The petition is now fully submitted. The Court has considered all of the submissions of the parties.

## II. PROCEDURAL ISSUES

### A. Waiver of the Right to Habeas Review

As a threshold matter, the respondent argues that Petitioner's waiver of his appeal rights "through the state and federal system"[5] as part of the 2006 plea agreement prevents him from bringing this habeas petition. As set forth below, the Court agrees.

Knowing and voluntary waivers of appeal rights as part of a plea agreement are generally enforceable. *See United States v. Hernandez*, 242 F.3d 110, 113 (2d Cir. 2001) ("It is by now well established that a knowing and voluntary waiver of the right to appeal is generally enforceable."); *see also United States v. Campusano*, 442 F.3d 770, 774 (2d Cir. 2006) ("[W]aivers of appeal are enforceable in all but a few situations . . . ."). While "'claimed waivers of appellate rights are to be applied narrowly and construed strictly against the Government[,]'"[6] enforceable waivers can preclude not only the right to direct appeal but also the right to collaterally attack the conviction in a habeas or other petition if petitioner is aware of the right to seek federal habeas review and knowingly and voluntarily relinquishes that right. *See Garcia-Santos v. United States*, 273 F.3d 506, 508 (2d Cir. 2001) (discussing facts that supported finding that petitioner knowingly and voluntarily waived right to appeal and petition under 28 U.S.C. § 2255); *accord Morales v. United States*, No. 08 Civ. 3901, No. 05 Cr. 120 (RO) (AJP), 2009 WL 3353064, at *4 (S.D.N.Y. Oct. 20, 2009); *Whelan v. United States*, No. 05 Civ. 923, 2007 WL 2262516, at *1-2 (E.D.N.Y. Aug. 3, 2007); *Santana v. United States*, No. 04 Civ. 1111 (SAS), 2005 WL 180932, at *4 (S.D.N.Y. Jan. 26, 2005). *See generally Frederick v. Warden, Lewisburg Corr. Facility*, 308 F.3d 192, 195-96 (2d Cir. 2002) ("There is no general bar to a waiver of collateral attack rights in a plea agreement. However, a waiver of appellate or collateral attack rights does not foreclose an attack on the validity of the process by which the waiver has been procured, here, the plea agreement.") (citation omitted); *Brown v. Thompson*, No. 7:06-cv-126(HL), 2007 WL 2594054, at *1 (M.D. Ga. Sept. 5, 2007) ("A waiver of the right to seek federal habeas relief is valid so

[5] (6/14/06 T.3.)

[6] *Hernandez*, 242 F.3d at 113 (quoting *United States v. Tang*, 214 F.3d 365, 368 (2d Cir. 2000))

long as the defendant knows at the time of his guilty plea that the right to federal habeas relief exists and realizes that he is giving up that right as part of the plea bargain.").

Here, the evidence from the record demonstrates that petitioner knowingly and voluntarily waived his appeal rights and that he understood those "appeal rights" to encompass any right to federal habeas review. The transcript of the June 2006 plea hearing shows that petitioner's counsel represented, in petitioner's presence, that, as part of the plea agreement, petitioner forfeited appeal rights "through the state and federal system":

> [DEFENSE COUNSEL]: At this time [petitioner] has authorized me to withdraw his previously entered plea of not guilty to the two charges of Burglary in the Second Degree and enter a plea of guilty to each count as an Attempted Burglary in the Second Degree. It's our understanding that in consideration of his plea, he would be sentenced to an indeterminate sentence, the minimum of twelve, maximum of life to run concurrent with each other. He would admit prior felony status and give up all rights to appeal through the state and federal system, that this would be the final resolution of this matter.

(6/14/06 T. 2-3.)

Petitioner himself was then specifically questioned about his waiver, and he told the court that he had discussed the effect of the waiver with his attorney:

> [THE PEOPLE]: Do you understand the disposition that we just placed on the record[,] including your waiving your right to appeal?
>
> [PETITIONER]: Yes.
>
> [THE PEOPLE]: Did you discuss what waiving your right to appeal means with Miss Powers, your attorney?
>
> [PETITIONER]: Yes.
>
> [THE PEOPLE]: And you're doing so voluntarily?
>
> [PETITIONER]: Voluntarily.

(6/14/06 T.12.)

The court later questioned petitioner again regarding the waiver of appeal and confirmed that it was knowing and voluntary:

> THE COURT: The reason why I mention the sentencing date is because[,] when I finally sentence you, whenever that is . . . you would have an automatic right to appeal to the Appellate Court and argue some error or mistake was made today. . . . In open court you pled guilty to the charges. I was satisfied you understand it[,] and all the elements were shown and proven and admitted[,] and you know

what the sentence is going to be.

[PETITIONER]: Exactly.

THE COURT: So the chance of there being any error is virtually nil.

But the prosecutor, understandably wants to have closure to this case. They don't want to have to prepare an appellate brief a year, a year and-a-half from now and argue what we did here on the 14th day of June was legal. You understand that?

[PETITIONER]: Yes.

THE COURT: You've spoke to Miss Powers about that?

[PETITIONER]: I have.

THE COURT: You're telling me under oath today that you're willing to do that?

[PETITIONER]: Yes, your Honor.

THE COURT: I am satisfied you know what that means[,] and the waiver is a knowing and intelligent one.

(6/14/06 T. 17-19.)

Thus, based upon a review of the transcript, it is clear (1) that petitioner was giving up his right to challenge his conviction in both the state and federal system, and (2) that the waiver was knowing and voluntary.

Although petitioner makes two arguments in an attempt to avoid application of the waiver, his arguments are meritless. First, petitioner contends that he understood the plea agreement to bar only appeal to the state courts: "[T]he plea provided that I would not appeal the instant matter to the appellate division . . . . I pled with that sole understanding and nothing more." (Letter from Petitioner to Court, Aug. 4, 2008, at 2.) However, it was clear on the record that he was giving up "all rights to appeal through the state and federal system." Moreover, although the term "habeas" was never used, it is clear that petitioner understood the federal system to include the right to a habeas petition because in August 2003, almost three years before his plea agreement, he had filed a habeas petition in this District.[7] Thus, there is no question that petitioner was aware that federal habeas review would be available to him in the absence of the waiver. *Cf. Allen v. Thomas*, 161 F.3d 667, 670 (11th Cir. 1998) (waiver of right to habeas review requires, "[a]t a minimum, the would-be petitioner must know at the time of the guilty plea that the right to federal habeas review exists, and he must realize he is giving up that right as part of his plea bargain.").[8]

[7] *See* Civil Docket for *Rodriguez v. Superintendent, Suffolk County Jail*, 03-cv-04184-ADS (E.D.N.Y.). The matter was stipulated discontinued without prejudice in March 2004. *Id.*

[8] The instant case, where reference was made to waiving rights through the federal system, is distinguishable from the situation in *Allen* where no reference was made whatsoever to waiver of any federal rights. *See Allen*, 161 F.3d at 672-73

Second, petitioner contends that he believed he was only waiving his right to appeal "the instant proceedings," which he claims he believed only referred to the June 14, 2006 proceedings, and that he did not know he was giving up his rights to "forego claims retrospectively." (Letter from Petitioner to Court, Aug. 4, 2008, at 2.) That argument is frivolous. His counsel made clear on the record that the waiver was not limited to any challenge to the sentencing, but "would be the final resolution of this matter." (6/14/06 T. 3.) Similarly, the court, in the context of confirming that the waiver was knowing and voluntary, made reference to the fact that the prosecutor wanted "closure" with respect to the case. (6/14/06 T. 18.) Thus, petitioner clearly understood that he was waiving any and all prior claims that he had asserted with respect to the offense to which he was pleading guilty.

In sum, the Court concludes that petitioner knowingly and voluntarily waived his federal habeas rights. Accordingly, the petition can be dismissed on that basis alone. However, for the reasons set forth below, the Court finds that the petition is also procedurally barred on other grounds and, in any event, fails on the merits.

---

(provision of plea agreement that petitioner would not seek "parole, commutation of his sentence, reprieve, or any other form of relief from life imprisonment" insufficient to waive habeas rights because there was, *inter alia*, "no indication [petitioner] even knew he had a right to federal habeas review . . . .").

## B. Effect of Guilty Plea

Even assuming *arguendo* that petitioner's waiver of his habeas rights was not knowing and voluntary, the record reflects that his *plea* itself was knowing and voluntary and forecloses any challenges to his conviction in this petition.

A knowing and voluntary plea precludes a habeas petitioner from challenging the legality of events occurring prior to the entry of his guilty plea. *See Whitehead v. Senkowski*, 943 F.2d 230, 233 (2d Cir. 1991) ("Generally a knowing and voluntary guilty plea precludes federal habeas corpus review of claims relating to constitutional rights at issue prior to the entry of the plea."); *accord Whitehurst v. Senkowski*, 485 F. Supp. 2d 105, 117-18 (N.D.N.Y. 2007); *Crispino v. Allard*, 378 F. Supp. 2d 393, 414 (S.D.N.Y. 2005); *see also Lynch v. Connell*, No. 06-CV-0027, 2009 WL 789428, at *3 (W.D.N.Y. Mar. 20, 2009) (collecting cases).

In the instant case, all of petitioner's claims arise from events occurring before his 2006 plea. Moreover, the Court concludes that his guilty plea was voluntarily, knowingly and intelligently made. To the extent that petitioner claims that he did not realize he was waiving these earlier claims by virtue of his plea, the Court finds that argument to be without merit, as discussed *supra*, in light of the guilty plea transcript. Accordingly, all of petitioner's claims are precluded by his guilty plea.

## C. Procedural Default

Even if petitioner did not waive his right to seek federal habeas review by his plea agreement and even if his claims were not

precluded by his guilty plea, his claims would still be procedurally barred because he never filed a state court appeal challenging his 2006 conviction, which is the basis for his custody. Any such challenges would now be procedurally barred in state court, and petitioner has asserted no grounds for overcoming the default.

### 1. Applicable Law

A district court shall not review a habeas petition unless "the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). Although a state prisoner need not petition for certiorari to the United States Supreme Court to exhaust his claims, *see Lawrence v. Florida*, 549 U.S. 327, 332 (2007), petitioner must fairly present his federal constitutional claims to the highest state court having jurisdiction over them. *See Daye v. Attorney Gen. of State of N.Y.*, 696 F.2d 186, 190 n.3 (2d Cir. 1982) (en banc). Exhaustion of state remedies requires that a petitioner "'fairly present federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'" *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (per curiam) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971) (internal quotation marks omitted) (alteration in original).

However, "it is not sufficient merely that the federal habeas applicant has been through the state courts." *Picard*, 404 U.S. at 275-76. On the contrary, to provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), alerting that court to the federal nature of the claim and "giv[ing] the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *see also Duncan*, 513 U.S. at 365-66. "A petitioner has 'fairly presented' his claim only if he has 'informed the state court of both the factual and the legal premises of the claim he asserts in federal court.'" *Jones v. Keane*, 329 F.3d 290, 294-95 (2d Cir. 2003) (quoting *Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997)). "Specifically, [petitioner] must have set forth in state court all of the essential factual allegations asserted in his federal petition; if material factual allegations were omitted, the state court has not had a fair opportunity to rule on the claim." *Daye*, 696 F.2d at 191-92 (citing, *inter alia*, *Picard*, 404 U.S. at 276 and *United States ex rel. Cleveland v. Casscles*, 479 F.2d 15, 19-20 (2d Cir. 1973)). To that end, "[t]he chief purposes of the exhaustion doctrine would be frustrated if the federal habeas court were to rule on a claim whose fundamental legal basis was substantially different from that asserted in state court." *Daye*, 696 F.2d at 192 (footnote omitted).

Like the failure to exhaust a claim, the failure to satisfy the state's procedural requirements deprives the state courts of an opportunity to address the federal constitutional or statutory issues in a petitioner's claim. *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). "[A] claim is procedurally defaulted for the purposes of federal habeas review where 'the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Reyes v. Keane*, 118 F.3d 136, 140 (2d Cir. 1997) (quoting *Coleman*, 501 U.S. at 735) (additional citations omitted). Where the petitioner "can

no longer obtain state-court review of his present claims on account of his procedural default, those claims are . . . to be considered exhausted." *DiGuglielmo v. Smith*, 366 F.3d 130, 135 (2d Cir. 2004) (citing *Harris v. Reed*, 489 U.S. 255, 263 n.9 (1989) and *Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991)).

However, "exhaustion in this sense does not automatically entitle the habeas petitioner to litigate his or her claims in federal court. Instead if the petitioner procedurally defaulted those claims, the prisoner generally is barred from asserting those claims in a federal habeas proceeding." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006) (citing *Gray v. Netherland*, 518 U.S. 152, 161 (1996), and *Coleman*, 501 U.S. 744-51). "[T]he procedural bar that gives rise to exhaustion provides an independent and adequate state law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default." *Netherland*, 518 U.S. at 162 (citations omitted).

The procedural bar rule in the review of applications for writs of habeas corpus "is based on the comity and respect that must be accorded to state-court judgments." *See House v. Bell*, 547 U.S. 518, 536 (2006). Petitioner's federal claims may be procedurally barred from habeas corpus review if they were decided at the state level on adequate and independent procedural grounds. *See Coleman*, 501 U.S. at 729-32. The purpose of this rule is to maintain the delicate balance of federalism by retaining a state's rights to enforce its laws and to maintain its judicial procedures as it sees fit. *Id.* at 730-31.

2. Analysis

In appealing his 2003 conviction and sentence, petitioner raised similar claims to the ones he raises in this habeas petition.[9] Petitioner's brief to the Second Department argued, *inter alia*, the following: (1) "multiple compounded errors" affected the proceedings below; (2) the trial court erred in letting the People withdraw their consent to the 1999 plea; (3) petitioner's rights against double jeopardy were violated by the 2000 plea; (4) petitioner's rights against double jeopardy were again violated when the trial court, following the 2003 Second Department decision, vacated the 2000 plea and reinstated the 1999 plea; and (5) in a footnote, that petitioner's previous appellate counsel was ineffective. *See* Brief of Defendant/Appellant, *People v. Rodriguez*, 2003-08039 (App. Div. July 29, 2004).

After considering petitioner's arguments, the Second Department reversed the trial court's decision in connection with the 2003 conviction and sentence, remitted the case to Suffolk County court, and directed the trial court to allow petitioner to withdraw his 2003 plea. *People v. Rodriguez*, 811 N.Y.S.2d at 755, *leave to appeal denied* 853 N.E.2d 258. Petitioner did just that and reached a new plea agreement with the prosecution, which

---

[9] Additionally, petitioner has presented ineffective assistance of appellate counsel claims to the state appellate courts in two petitions for error *coram nobis*. *See People v. Rodriguez*, 766 N.Y.S.2d 896 (App. Div. 2003), *leave to appeal denied* 808 N.E.2d 368 (N.Y. 2004); *People v. Rodriguez*, 840 N.Y.S.2d 915 (App. Div. 2007), *leave to appeal denied* 878 N.E.2d 1026 (2007) and *motion for reconsideration denied* 881 N.E.2d 1210 (2008). Neither of these petitions related to petitioner's 2006 conviction and sentence.

resulted in the conviction for which he is currently incarcerated.

Other than filing a motion with the trial court to have his sentence set aside pursuant to N.Y. Crim. Proc. Law § 440.20, petitioner has not attempted to have his 2006 conviction and sentence reviewed at all by the state courts. Therefore, petitioner has not presented the New York appellate state courts with his federal claims in light of the conviction and sentence for which he is currently in custody.[10]

Furthermore, petitioner can no longer obtain state court review of his 2006 conviction. Petitioner admits that he waived—at the very least—his right to appeal the June 2006 proceedings. (*See* Letter from Petitioner to Court, Aug. 4, 2008, at 2 ("[T]he plea provided that I would not appeal the instant matter to the appellate division . . . . I pled with that sole understanding and nothing more.").) Moreover, even in the absence of any waiver, the time for filing any direct appeal has expired,[11] and petitioner cannot

obtain state collateral review of claims he failed to raise on direct appeal. *See* N.Y. Crim. Proc. Law § 440.10(2)(c) (stating that court should deny motion to vacate judgment where defendant could have, but did not, raise claim on direct appeal). Thus, because petitioner no longer has any further remedies available to him in the New York State courts with respect to 2006 conviction, he meets the technical requirements for exhaustion. *Coleman*, 501 U.S. at 732. Thus, the claim is deemed exhausted under 28 U.S.C. § 2254(b).

Nonetheless, petitioner's claims are procedurally barred. Where "'the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,' federal habeas courts also must deem the claims procedurally defaulted." *Aparicio v. Artuz*, 269 F.3d 78, 90-91 (2d Cir. 2001) (quoting *Coleman*, 501 U.S. at 735 n.1). As noted above, the state courts would find any direct appeal time barred and any motion for state collateral review of his conviction would be barred by petitioner's failure to file a direct appeal.[12]

---

[10] *See* 28 U.S.C. § 2254(a) (stating that habeas relief is available to "a person in custody *pursuant to a judgment of a state court* . . . .") (emphasis added).

[11] *See*, *e.g.*, N.Y. Crim. Proc. Law § 460.10 (stating that an appeal from a criminal judgment or sentence generally must be taken within 30 days after the court imposes the sentence); *see also Maisonet v. Conway*, No. CV-04-2860 (CPS), 2007 WL 2027323, at *3 (E.D.N.Y. July 10, 2007) (finding claim procedurally barred because "the thirty-day time limit set out in CPL § 460.10(4)(a) for filing of leave to appeal has expired, barring Petitioner from pursuing any further argument on that claim in state court"). While N.Y. Crim. Proc. Law § 460.30 allows for extensions of the time to appeal in some situations, none of those situations apply here,

and, in any event, petitioner could not move for an extension now because more than one year has passed since the time for filing an appeal has expired. *See* § 460.3(1).

[12] In a case decided almost 20 years ago—*Pesina v. Johnson*, 913 F.2d 53 (2d Cir. 1990)—the Second Circuit declined to deem a claim exhausted but procedurally defaulted where a habeas petitioner had raised the claim in a motion to vacate his conviction pursuant to N.Y. Crim. Proc. Law § 440.10, the state trial court denied the motion, the petitioner did not appeal the denial, and the time for appealing the denial had passed. *See* 913 F.2d at 54. The Court reasoned that it could not say the claim was exhausted until the

petitioner actually presented the claim raised in the § 440.10 motion to New York Court of Appeals, regardless of "whether or not it seems likely that he will be held to be procedurally barred" because the time for filing an appeal had expired. *Id.* Although the Second Circuit has never expressly overruled *Pesina*, language in subsequent Supreme Court and Second Circuit decisions indicates that, contrary to *Pesina*, a federal habeas court may deem a claim exhausted but procedurally barred where it would be futile for a petitioner to raise the claim in state court. *See, e.g.*, *Coleman*, 501 U.S. at 735 n.1 (stating procedural bar applies where "the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred"); *Aparicio*, 269 F.3d at 91 (finding ineffective assistance of counsel claim exhausted but procedurally barred where "any state court to which Petitioner might now present this claim would almost certainly find it procedurally barred"); *Reyes v. Keane*, 118 F.3d 136, 139-40 (2d Cir. 1997) (deeming ineffective assistance of counsel claim exhausted but procedurally barred where attempt to raise claim on state collateral review "would be futile"); *Bossett v. Walker*, 41 F.3d 825, 829 (2d Cir. 1994) (deeming claims that had not been presented to New York Court of Appeals on direct review to be exhausted but procedurally barred because state procedural rules prohibited additional direct appeals and collateral review); *Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991) (deeming claim exhausted but procedurally barred where the "New York procedural rules plainly bar petitioner from attempting to raise his sentencing and prosecutorial misconduct claims before the New York Court of Appeals"); *see also Gray v. Netherland*, 518 U.S. 152, 161 (1996) (finding state procedural rule barred *Brady* claim that was never raised in state court). In spite of this case law, some district courts in this circuit have held fast to *Pesina* and declined to deem a claim exhausted even though it appears that any state

court appeal regarding the claim would be untimely. *See, e.g.*, *Qunitana v. McCoy*, No. 03 Civ. 5747 (KMK), 2006 WL 300470, at *5 (S.D.N.Y. Feb. 6, 2006) (explaining that *Pesina* may be on "shaky ground" but nonetheless declining to deem exhausted claim raised in *coram nobis* petition which petitioner never presented to New York Court of Appeals); *Bloomer v. Costello*, No. 00 Civ. 5691 (GEL), 2001 WL 62864, at *5 (S.D.N.Y. Jan. 24, 2001). Others, however, have relied on the post-*Pesina* cases cited above and concluded that, if a petitioner fails to comply with a state court deadline for taking an appeal regarding a particular claim, the habeas court may deem that claim exhausted but procedurally defaulted, regardless of whether an state court appeal was actually filed. *See, e.g.*, *Sams v. Donnelli*, No. 07-cv-4600 (DLC), 2008 WL 2939526, at *3 & n.2 (S.D.N.Y. July 28, 2008) (stating that "subsequent guidance from the Court of Appeals [for the Second Circuit] and the Supreme Court makes clear that, contrary to the holding in *Pesina*, . . . the habeas court can and should consider . . . claims to be 'technically exhausted' but procedurally defaulted" when the time for seeking state court review has passed) (internal citations omitted); *Maisonet*, 2007 WL 2027323, at *3. Here, this Court finds, based on the post-*Pesina* cases cited above, that it can deem petitioner's claims exhausted but procedurally barred. Moreover, *Pesina* is distinguishable from the instant case because it dealt with a failure to appeal denial of a § 440.10 motion, whereas here petitioner neither directly appealed his conviction nor appealed the trial court's denial of his § 440.20 motion. *Cf. Bloomer*, 2001 WL 62864, at *5 (following *Pesina* because, in part, "Second Circuit cases finding claims 'exhausted but defaulted' all deal with slightly different New York procedural settings than the one at issue here and in *Pesina*"). In any event, even if the Court were to find the claims unexhausted, it would deny those claims on the merits for the reasons set forth *infra*. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be

Petitioner's inability to return to state court provides an independent and adequate state ground upon which his claim is procedurally defaulted. Petitioner has shown neither "cause and prejudice" nor "actual innocence," one of which must be shown to overcome a procedural default. *See House v. Bell*, 536 U.S. 518, 536-40 (2006). Accordingly, petitioner's claims are procedurally barred from habeas review.

III. REVIEW ON THE MERITS

Although there are three independent grounds for dismissal of this habeas petition, the Court, in an abundance of caution, has analyzed the merits of petitioner's claims and concludes that none of them provide a basis for granting habeas relief.

A. Standard of Review on the Merits

To determine whether petitioner is entitled to a writ of habeas corpus, a federal court must apply the standard of review set forth in 28 U.S.C. § 2254, which provides, in relevant part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court

proceedings unless the adjudication of the claim –

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2554(d). "'Clearly established Federal law'" is comprised of "'the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'" *Green v. Travis*, 414 F.3d 288, 296 (2d Cir. 2005) (alteration in original) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. A decision is an "unreasonable application" of clearly established federal law

---

denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.*

AEDPA establishes a deferential standard of review: "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (quoting *Williams*, 529 U.S. at 411). The Second Circuit added that, while "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Id.* at 93 (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)). Finally, "if the federal claim was not adjudicated on the merits, 'AEDPA deference is not required, and conclusions of law and mixed findings of fact and conclusions of law are reviewed *de novo.*'" *Dolphy v. Mantello*, 552 F.3d 236, 238 (2d Cir. 2009) (quoting *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)).

### B. Analysis

#### 1. 1986 Conviction (Grounds 1 and 8)

Petitioner claims that his 1986 conviction, which partially formed the basis for his status as a persistent violent felony offender, violated his constitutional due process protections and his right to effective assistance of counsel. As set forth below, this claim cannot be asserted in this habeas petition.

A habeas petitioner may challenge his current sentence on the grounds that an earlier conviction used to enhance his current sentence was unconstitutionally obtained. *Lackawanna County Dist. Attorney v. Coss*, 532 U.S. 394, 401-02 (2001) (finding that petitioner satisfied § 2254's "in custody" requirement because his "petition can be (and has been) construed as 'asserting a challenge to the [current] sentence, as enhanced by the allegedly invalid prior . . . conviction.'") (quoting *Maleng v. Cook*, 490 U.S. 488, 493 (1989)). In *Coss*, however, the Supreme Court held that "once a state conviction is no longer open to direct or collateral attack in its own because the defendant failed to pursue those remedies while they were available (or because the defendant did so unsuccessfully), the conviction may be regarded as conclusively valid." *Id.* at 403.[13]

In this case, the Second Department affirmed petitioner's 1986 conviction, and the Court of Appeals denied leave to appeal. *See People v. Rodriguez*, 524 N.Y.S.2d 667, 667 (App. Div. 1988), *leave to appeal denied* 526 N.E.2d 60 (N.Y. 1988). Petitioner also unsuccessfully sought state collateral review of the 1986 conviction. *See People v. Rodriguez*, 713 N.Y.S.2d 884 (App. Div. 2000) (denying application for writ of error *coram nobis*); *People v. Rodriguez*, Ind. No.

---

[13] The Supreme Court in *Coss* said that an exception to this rule existed where, in the prior conviction, there was a failure to appoint counsel. 532 U.S. at 404. Additionally, a section of the *Coss* opinion in which only three Justices joined recognized that further exceptions to this rule may exist when a state court unjustifiably refused to rule on a properly presented constitutional claim or where there was compelling evidence the petitioner was actually innocent. *See* 532 U.S. at 405-06. None of these exceptions apply here.

2100/85 (Sup. Ct. Queens County Jan. 31, 2000) (denying petitioner's motion to vacate 1986 sentence pursuant to N.Y. Crim. Proc. Law § 440.20). Therefore, the 1986 conviction is conclusively valid, and petitioner's due process and ineffective assistance of counsel claims must fail.

### 2. Withdrawal of the 1999 Plea Agreement (Ground 2)

Petitioner also contends that the Supreme Court, Suffolk County erred when, in August 2000, after finding petitioner was not a persistent violent felony offender, it allowed the People to withdraw their consent to the plea agreement. As set forth below, the Court disagrees.

The 2006 Second Department decision found that the "Supreme Court properly vacated the 1999 plea, as the People's consent was conditioned on the defendant's adjudication as a persistent violent felony offender." 811 N.Y.S.2d at 754. The decision then cited to a New York statute and case law supporting the proposition that a prosecutor has a right to withdraw his consent to a plea agreement when the judge imposes a sentence that is lower than the parties agreed to. *See, e.g.*, *People v. Farrar*, 419 N.E.2d 864, 866 (N.Y. 1981) ("Where the record shows that the prosecutor's consent to a plea is premised on a negotiated sentence and a lesser sentence is later deemed more appropriate, the People should be given the opportunity to withdraw their consent."). Because the Second Department adjudicated this issue on the merits, it is entitled to "AEDPA deference." *See Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001) ("For the purposes of AEDPA deference, a state court 'adjudicates' a state prisoner's federal claim on the merits when it (1) disposes of the claim 'on the merits,' and

(2) reduces its disposition to judgment.").

Although a breach of a plea agreement is "undoubtedly a violation of the defendant's rights,"[14] no breach occurred here. The People here maintained throughout that their acceptance of the plea agreement depended on petitioner receiving a sentence of twelve years to life. Because the People did not breach any promise to petitioner, allowing the People to withdraw their plea agreement was not contrary to, nor an unreasonable application of, clearly established federal law and is, thus, not grounds for habeas relief.

### 3. Double Jeopardy Claim Regarding 1999 Plea (Ground 3)

Petitioner claims the trial court violated his rights against double jeopardy when, in August 2000, it allowed the People to withdraw their consent to the 1999 plea and placed petitioner in a pre-plea status. As set forth below, this claim is meritless.

The 2006 Second Department decision found this double jeopardy claim to be without merit. *See Rodriguez*, 811 N.Y.S.2d at 754 ("Since the Supreme Court properly vacated the 1999 plea when the People withdrew their consent to it, jeopardy did not attach. Thus, the defendant's rights against double jeopardy were not implicated."). Because the Second Department adjudicated the claim on the merits, AEDPA deference applies.

The Double Jeopardy Clause provides that no "person shall be subject for the same offense to be twice put in jeopardy of life or

---

[14] *Puckett v. United States*, - - - U.S. - - -, 129 S. Ct 1423, 1429 (2009) (citing *Santobello v. New York*, 404 U.S. 257, 262 (1971)).

limb." U.S. Const. amend. V, cl. 2. "'[It] protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.'" *Ohio v. Johnson*, 467 U.S. 492, 498 (1984) (quoting *Brown v. Ohio*, 432 U.S. 161, 165 (1977)). The purpose of the Clause is to prevent the government from "'mak[ing] repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent, he may be found guilty.'" *United States v. Podde*, 105 F.3d 813, 816 (2d Cir. 1997) (quoting *Green v. United States*, 355 U.S. 184, 187-88 (1957))

"As a general rule, jeopardy attaches in a criminal case at the time the [trial] court accepts the defendant's guilty plea." *United States v. Aliotta*, 138 F.3d 78, 83 (2d Cir.1999); *see also Morris v. Reynolds*, 264 F.3d 38, 49 (2d Cir. 2001) ("[A] trial court may not sua sponte reinstate a dismissed felony following acceptance of a guilty plea to a lesser offense. Nor may it sua sponte vacate the defendant's plea in order to reinstate the greater offense.").

In *Morris*, for example, Morris was indicted for third-degree weapons possession, a felony, and a lesser included count of fourth degree weapons possession, a misdemeanor. 264 F.3d at 42. The state trial court dismissed the felony count and Morris, without objection from the prosecution, pled guilty to the misdemeanor. *Id.* at 42-43. The trial court

subsequently[15] reinstated the felony charge, and Morris pled guilty to that charge. *Id.* at 43.

Morris later petitioned for a writ of habeas corpus. The Second Circuit found that the reinstatement of the felony charge violated Morris's rights against double jeopardy because, when Morris pled guilty to the misdemeanor, no greater offense was pending and the prosecution did not object to Morris's plea. *See id.* at 50. The subsequent felony prosecution "infringed Morris's interests in repose which the Double Jeopardy Clause protects." *Id.*

Conversely, jeopardy does not attach when the court's acceptance of the guilty plea is conditional. *Rizzo v. Rock*, No. 08-CV-269, 2009 WL 385453, at *4 (W.D.N.Y. Feb. 13, 2009) (finding double jeopardy not implicated where trial court's acceptance of guilty plea was implicitly conditioned on judge's review of pre-sentence report); *Matthews v. Keane*, 94 Civ. 2815 (MBM), 1995 WL 459251, at *3 (S.D.N.Y. Aug. 3, 1995) (finding jeopardy did not attach to guilty plea because plea agreement was expressly conditional on judge's acceptance of pre-sentence report); *see also Ricketts v. Adamson*, 483 U.S. 1, 12 (1987) (holding that Double Jeopardy Clause not violated where defendant pled guilty pursuant to plea agreement, breached plea agreement, and then was re-indicted on original charge where plea agreement waived double jeopardy defense if plea agreement was

---

[15] There was some question as to whether the trial court reinstated the felony charge before or after it took the misdemeanor plea. The Second Circuit found that the felony charge was not reinstated until after the judge accepted Morris's misdemeanor plea. *See id.* at 48.

violated); *United States v. Henriquez*, 731 F.2d 131, 136 (2d Cir. 1984) (characterizing defendants' double jeopardy arguments as "unavailing" because defendants had conditionally pled guilty pending appellate review of trial court's subject matter jurisdiction and preservation of evidence issues); *United States v. Ventura-Cruel*, 356 F.3d 55, 61 n.8 (1st Cir. 2003) (explaining that Double Jeopardy Clause not violated when court withdrew defendant's previously entered guilty plea and reinstated indictment because court's initial acceptance of plea was implicitly conditional because Federal Rules of Criminal Procedure gave court ability to vacate plea until it entered judgment).

In this case, petitioner's 1999 plea was pursuant to an agreement with the People. The People's consent to the agreement was contingent upon petitioner receiving a sentence of twelve years to life. Additionally, because the plea agreement allowed petitioner to plead guilty to a lesser charge than the charge in the indictment, the People's consent was required as a matter of law. *See* N.Y. Crim. Proc. L. § 220.1(4)(b) (stating that a defendant may plead guilty to a lesser charge "with both the permission of the court and the consent of the people").

Therefore, this case is unlike *Morris* where the defendant, by pleading guilty, had resolved all the charges against him without prosecutorial objection and thus had a strong interest in finality. Instead, because the plea agreement would not be fully consummated until the court determined petitioner's sentence, the situation here is analogous to one where a court accepts a plea agreement conditionally, and, therefore, jeopardy does not attach. As such, the Second Department's decision that the trial court did not violate petitioner's double jeopardy by vacating the 1999 plea is not contrary to, nor an unreasonable application of, clearly established federal law.

4. Double Jeopardy Claim Regarding Vacatur of 2000 Plea (Ground 4)

Petitioner also contends that his double jeopardy rights were violated when, in June 2003, the trial court vacated the 2000 plea and reinstated the 1999 plea. As set forth below, this claim is without merit.

The Second Department's 2006 decision held that the trial court "did not have the inherent power to vacate the 2000 plea, and without the defendant's consent, reinstate the 1999 plea." 811 N.Y.S. at 754. Although the Second Department's discussion of this claim did not reference or cite to the Double Jeopardy Clause, neither did it appear to rest on a state procedural bar. Therefore, petitioner's claim on this ground is reviewed with AEDPA deference. *See Jimenez v. Walker*, 458 F.3d 130, 145 (2d Cir. 2006) ("Absent a clear and express statement of reliance on a state procedural bar," a state court's adjudication's of a federal claim is "deem[ed] . . . to rest on the merits of the federal claim. Such decisions . . . must be afforded AEDPA deference . . . .").

In analyzing this claim, it is helpful to understand the factual and legal situation faced by the trial court in 2003. Petitioner was serving two concurrent seven-year sentences pursuant to his 2000 plea to two counts of second-degree burglary, a Class C felony under New York law. The trial court, following the People's successful appeal, had been directed by the Second Department to determine whether petitioner was a persistent violent felony offender. *See* 753 N.Y.S.2d at 854 ("We remit to the Supreme Court, Suffolk

County, for further proceedings to determine whether the defendant should be adjudicated a persistent violent felony offender . . . .").

The trial court determined that petitioner was a persistent violent felony offender. *See People v. Rodriguez*, No. 668-1998 (Sup. Ct., Suffolk County Nov. 19, 2003) at *6 ("After considering all defendant's contentions, as well as the definitions of persistent violent felony offender as set forth in Penal Law section 708.08(1), this Court concludes the answer is <u>yes</u>.") (alteration in original). At the time, the minimum sentence for a Class C felon who was a persistent violent felony offender needed to "be at least sixteen years and must not [have] exceed[ed] twenty-five years." N.Y. Penal Law § 70.08(3)(b) (pre-2009). Thus, when the court adjudicated petitioner a persistent violent felony offender, petitioner's concurrent seven-year sentences became illegal.

In response to this issue, the trial court vacated the 2000 plea and, without petitioner's consent and at the suggestion of the People,[16] reinstated the 1999 plea. After petitioner appealed, the Second Department held that the trial court did not have inherent power to vacate petitioner's 2000 plea, that the 2000 plea should be reinstated, and that petitioner should have the opportunity to withdraw the 2000 plea. *See* 811 N.Y.S. 2d at 755.

As an initial matter, the Double Jeopardy Clause did not prevent the trial court from vacating the 2000 *sentence. See United States v. Vargas*, 564 F.3d 618, 624 (2d Cir. 2009) ("[T]he Double Jeopardy Clause's 'requirement that a defendant only be punished once for a particular crime does not mean that this punishment cannot be modified or extended'" (quoting *United States v. Pettus*, 303 F.3d 480, 487 (2d Cir. 2002))); *Williams v. Travis*, 143 F.3d 98, 99 (2d Cir. 1998) (re-sentencing did not violate Double Jeopardy Clause because habeas petitioner "had no legitimate expectation of finality in his original sentence, which was not authorized by law, was appealable by the government, and was modified only a week after it was imposed"). To the extent the trial court erred in vacating the 2000 *plea* and reinstating the 1999 plea, the Second Department decision corrected any error that the trial court made. The effect of the Second Department decision was that petitioner's 2000 plea stood, but his illegal sentence was vacated.[17] Therefore, the New York State courts' adjudication of this issue did not violate the Double Jeopardy Clause, nor was it contrary to (or an unreasonable application of) any other clearly established federal law.

### 5. Due Process Claim (Ground 5)

Without elaboration, petitioner also claims that, viewed as a whole, the proceedings in the state courts violated fundamental fairness and due process. This

---

[16] *See* Affidavit of Assistant District Attorney Kathleen McGovern, *People v. Rodriguez,* I-666-1998 (Sup. Ct., Suffolk County May 27, 2003) ¶ 8 ("It is the People's position that, at this point, the defendant should be considered to have pled guilty to a single count of Attempted Burglary in the Second Degree . . . .").

[17] The Second Department directed the trial court to give petitioner the option to withdraw his 2000 plea because the 2000 plea "was conditioned on the imposition of two concurrent seven-year terms of imprisonment," and this condition could no longer be fulfilled given petitioner's persistent violent felony offender status. *See* 811 N.Y.S.2d at 755.

argument is unavailing. As a threshold matter, petitioner was able to seek redress of his claims in state trial court, on direct appeal to state appellate courts, and on collateral review in state appellate courts. *See Fuentes v. Shevin*, 407 U.S. 67, 80 (1972) (defining "procedural due process" as notice and the opportunity to be heard). In any event, there is no indication on the record that these proceedings were so fundamentally unfair as to violate petitioner's due process rights in any way.

### 6. Ineffective Assistance of Counsel (Ground 6)

Petitioner also appears to assert that the lawyer appointed to represent him on appeal following the 1999 and 2000 proceedings in Suffolk County court provided ineffective assistance of counsel in violation of the Sixth Amendment. Specifically, petitioner claims appellate counsel should have "argued the impropriety or constitutionality of the proceedings in the Court below" and that appellate counsel failed to "prosecute[ ] the petitioner's appeal." Petition at 8.[18] As set

forth below, this claim has no merit.

Petitioner previously claimed that his counsel for this appeal was ineffective. He did so by applying for a writ of error *coram nobis*. The Second Department denied that application in a brief opinion that did not explain its reasoning. *See People v. Rodriguez*, 766 N.Y.S. 896, 896 (2d Dep't 2003). In a later appeal, petitioner's brief described petitioner's *pro se* papers in this *coram nobis* application as "confusing." *See* Brief of Defendant/Appellant, *People v. Rodriguez*, 2003-08039 (App. Div. July 29, 2004) at 7 n.2.

This Court does not have petitioner's *coram nobis* papers on the record before it in this habeas petition. Nevertheless, the Second Department's decision is still an "adjudicat[ion] on the merits," see 28 U.S.C. § 2254(d), and thus entitled to the deferential standard of review under AEDPA. *See Sellan*, 261 F.3d at 314 (finding that Second Department adjudicated petitioner's ineffective assistance of counsel claim on the merits by denying motion for a writ of *coram nobis*, even though denial did not refer to Sixth Amendment or federal case law).

To prevail on an ineffective assistance of counsel claim, petitioner must: "(1) demonstrate that his counsel's performance 'fell below an objective standard of reasonableness' in light of 'prevailing professional norms'; and (2) 'affirmatively prove prejudice' arising from counsel's allegedly deficient representation." *United States v. Cohen*, 427 F.3d 164, 167 (2d Cir.

---

[18] The People filed the 2003 appeal in September 2000 following the trial court's finding that petitioner was not a persistent violent felony offender. Petitioner claims he also filed a notice of appeal at the same time, but none appears in the record. Petitioner's brief in his subsequent 2003 appeal to the Second Department states that petitioner's earlier appeal was dismissed as abandoned after petitioner's counsel did not oppose the People's motion to dismiss. *See* Brief of Defendant/Appellant, *People v. Rodriguez*, 2003-08039 (July 29, 2004) at 7-8. It is unclear whether petitioner's initial appellate counsel was appointed to represent petitioner only in the context of the People's appeal, or to also make a cross-appeal on behalf of appellant. In any event,

---

it is clear that no ineffective assistance of appellate counsel occurred with respect to this appeal for the reasons set forth *infra*.

2005) (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 693 (1984)).

Petitioner cannot make that showing here. Petitioner appears to argue that counsel should have affirmatively raised due process and possibly double jeopardy arguments in the context of the People's appeal. This Court has already concluded that no double jeopardy or due process violations occurred. Accordingly, counsel could not have been ineffective for failing to raise these meritless arguments. *See Frederick*, 308 F.3d at 198 ("Because we conclude that there was no Rule 11 violation, it was not objectively unreasonable for appellant's [counsel] to fail to raise such a claim, and there was no prejudice to appellant. Neither the deficiency nor the prejudice prong of *Strickland* having been satisfied, therefore, appellant's ineffective assistance claim fails."). Additionally, counsel was not ineffective because the People's claim—regarding petitioner's persistent violent felony status—was meritorious and all other issues would be considered by the lower court, including any that would be raised on appeal by petitioner, after the matter was remitted. Accordingly, the ineffective assistance of appellate counsel claims fail as they relate to the 1999 and 2000 proceedings.

### 7. Ineffective Assistance of Counsel (Ground 7)

In his amended petition, petitioner also claims that his lawyer on his appeal to the Second Department following his 2003 plea and sentence was ineffective. Specifically, petitioner alleges that his appellate counsel should have argued that his enhanced sentence as a persistent violent felony offender was contrary to the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and should have advanced a "cumulative

error" argument. (*See* Amended Petition at ii.) As set forth below, this claim is without merit.

Petitioner previously claimed his lawyer in this appeal was ineffective when he applied to the Second Department for a writ of error *coram nobis*. The Second Department rejected that application. *People v. Rodriguez*, 840 N.Y.S.2d 915, 915 (App. Div. 2007), *leave to appeal denied* 878 N.E.2d 1026 (N.Y. 2007), *motion for reconsideration denied* 881 N.E.2d 1210 (N.Y. 2008). Therefore, petitioner's claims were adjudicated on the merits by a state court, and AEDPA deference applies. *See Sellan*, 261 F.3d at 314.

Petitioner's appellate counsel argued the following: (1) petitioner's conviction violated due process; (2) the original Suffolk County trial court should not have allowed the People to withdraw their consent to the 1999 plea and the 2000 plea was in violation of Double Jeopardy Clause; and (3) the trial court erred in 2003 by vacating the 2000 plea and reinstating the 1999 plea without petitioner's consent; (4) upon remand to Suffolk County court following the Second Department's 2003 decision, the case should have been assigned to the original trial judge and not re-assigned; (5) defendant's sentence was excessive and should be modified; and (6) in a footnote, that petitioner's counsel on the earlier appeal to the Second Department was ineffective. *See* Brief of Defendant/Appellant, *People v. Rodriguez*, 2003-08039 (App. Div. July 29, 2004).

As noted above, the framework established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984) applies to claims of ineffective assistance of counsel. Appellate counsel is not ineffective simply for failing to "advance every nonfrivolous [sic] argument that could

be made." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1992) (citing *Jones v. Barnes*, 463 U.S. 745, 754 (1983)). "However, a petitioner may establish constitutionally inadequate performance if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Id.*

Petitioner cannot make that showing here. The record shows that appellate counsel made numerous arguments on appeal. Particularly given the relatively convoluted proceedings below, it would have been counterproductive for counsel to raise every colorable argument. As to petitioner's argument that counsel should have raised a "cumulative error argument," it appears counsel did in fact raise an analogous argument. *See* Brief of Defendant/Appellant, *People v. Rodriguez*, 2003-08039 (App. Div. July 29, 2004), at 13 ("The instant case is a classic example of one where multiple compounded errors of the courts below affected 'the organization of the Court or the mode of proceedings prescribed by law.'" (quoting *People v. Ahmed*, 496 N.Y.S.2d 984, 985 (1985))).

As to petitioner's *Apprendi* argument, at the time of the appeal, New York's highest court, the Court of Appeals, had ruled that the persistent felony offender statute, a statute that is similar to the persistent violent felony offender statute, did not violate *Apprendi. See People v. Rosen*, 752 N.E.2d 844, 847 (N.Y. 2001) ("Defendant had no constitutional right to a jury trial to establish the facts of his prior felony convictions."). Under these circumstances, counsel was not unreasonable under the first prong of *Strickland* for failing to raise an *Apprendi* claim. Additionally, since petitioner's 2003 appeal, numerous courts, including the New York Court of Appeals, have rejected *Apprendi* challenges to

the persistent violent felony offender statute. *See Boutte v. Poole*, 07 Civ. 8412 (GEL), 2008 WL 3166696, at *3 (S.D.N.Y. Aug. 4, 2008) (stating that "'district courts in this circuit have routinely rejected . . . challenges to [the persistent violent felony offender statute] based on *Apprendi*'" and citing cases (quoting *Francischelli v. Potter*, No. 03 Civ. 6091, 2007 WL 776760, at *9 (E.D.N.Y. Mar. 12, 2007))); *People v. Leon*, 884 N.E.2d 1037, 1040 (N.Y. 2008) (finding *Apprendi* challenge to persistent violent felony offender statute to be "without merit"). Therefore, petitioner was not prejudiced under *Strickland*'s second prong. *See Mayo*, 13 F.3d at 534 (explaining that Strickland's prejudice determination may be made "with the benefit of hindsight").

In short, there is simply no basis to support an ineffective assistance of appellate counsel claim as it relates to the 2003 proceedings.

8.  2006 Plea and Sentence (Ground 9)

Petitioner also attempts to use Federal Rule of Civil Procedure 60(b) to attack his 2006 plea and sentence. Without detailed explanation, he argues that "the court was bound by the Doctrine of Res Judicata; and . . . the state was Collaterally Estopped from raising, on petitioner's appeal, that their consent to the 1999 plea agreement was properly withdrawn." This claim is simply a reiteration of petitioner's prior claims challenging the People's withdrawal from the 1999 plea agreement. As discussed *supra*, there is no legal basis to challenge the ruling by the state court regarding the vacatur of the 1999 plea. The state court properly allowed the 1999 plea to be vacated when the People withdrew their consent to it.

In sum, having carefully analyzed all of

petitioner's claims, the Court concludes that the state court decisions on the issues raised by petitioner were not contrary to, nor an unreasonable application of, clearly established federal law, and all of the claims lack merit and do not provide any ground for habeas relief. Accordingly, the habeas petition must be denied.

## IV. CONCLUSION

For the foregoing reasons, petitioner has demonstrated no basis for relief under 28 U.S.C. § 2254. Therefore, the petition for a writ of habeas corpus is denied. Because petitioner has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue. *See* 28 U.S.C. 2253(c)(2). The Clerk of the Court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: January 6, 2010
Central Islip, New York

* * *

Petitioner appears *pro se*. The attorney for respondent is Thomas J. Spota, District Attorney of Suffolk County by Rosalind C. Gray, Assistant District Attorney, 200 Center Drive, Riverhead, NY 11901.